PAUL W. GRAUER, Plaintiff-Appellee, *v.* VALVE AND PRIMER CORPORATION, Defendant-Appellant.

Second District   No. 76-156

Opinion filed March 31, 1977.

Drake Leoris, of Leoris & Cohen, of Chicago, for appellant.

Donald Kolp and Paul W. Grauer, both of Schaumberg, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

The plaintiff, Paul W. Grauer, filed an action against his former employer, Valve and Primer Corporation (hereafter, the "Corporation"), seeking damages for the breach of an employment contract, a recovery in *quantum meruit,* and an accounting to determine the amount owed him under the contract. After a bench trial, the court entered judgment for Grauer in the amount of $4,200. On appeal, the Corporation contends that

the judgment of the trial court was against the manifest weight of the evidence. We affirm the trial court's judgment.

Grauer is a registered engineer and tax attorney. He was employed by the Corporation in August of 1972, as an assistant to its president, V. B. Dickson. In this position, he functioned both as a legal adviser and as an engineer. During 1972 he worked under an oral contract of employment, at an annual salary of $18,000.

In December of 1972, the Corporation's president sent the following letter to Grauer:

"TO: Paul Grauer
FROM: V. B. Dickson
SUBJECT: Your 1973 Salary
Thank you for a job well done in 1972.
Here is your Salary Contract for 1973.
.75% on all Sales (i.e. Billings)
You will receive a monthly draw of $1,600.00.
We expect to ship between $3,000,000 and $4,000,000 in 1973 with our new plant, equipment and personnel. And of course with everyone having a year more experience.
Please sign and return one copy to me.
/s/ V. B. Dickson
V. B. Dickson, President
Valve and Primer Corp.
I understand and agree to the above.
By:_____
Date:_____ "

Grauer returned the letter without signing it. Dickson then mailed it back to Grauer with a memo dated January 18, 1973, which stated:

"Attached guarantees you a minimum of $22,500 in 1973—more likely $24,000 plus—because I look for $3,500,000 sales (ie. Shipments).

I review it annually based on performance."

Grauer then, on February 1, 1973, signed and dated the original letter, and sent it to Dickson. On July 23, 1973, Grauer received a letter from Dickson, which congratulated him and told him to "keep up the good work." Grauer was fired six weeks later.

The Corporation's first contention is that Grauer's contract of employment was terminable at will, and that the Corporation therefore had the right to dismiss him at any time, without liability. They note that a hiring at a monthly or annual salary, if no duration is specified in the contract, is presumed to be at will and either party may terminate the hiring at his pleasure without liability. (*Long v. Arthur Rubloff & Co.*

(1975), 27 Ill. App. 3d 1013, 1023.) Here, however, Dickson's memo "guarantees" Grauer "a minimum of $22,500 in 1973," a sum which, in view of the Corporation's projected and actual business volume could only accumulate if Grauer were allowed to remain in employment for a full year. The memo also stated that the contract would be reviewed "annually," again raising a strong inference that a contract of a year's duration was intended.

Counsel for the Corporation conceded during oral argument that this language from Dickson's memo supports an inference that a contract of annual duration, not terminable at will, was intended. However, he asserts that the memo, which was in Dickson's handwriting and indisputably authored by him, is not pertinent because Dickson did not sign it. The Corporation also contends that the contract between the parties was oral, and therefore not governed by the terms of Dickson's letter and memo.

■■■ We observe that the memo had no independent purpose, but was obviously intended to clarify the terms of Dickson's earlier letter, which had been signed, and was enclosed with it. The memo may properly be regarded as but an addition to the letter; there was thus no reason for exacting a requirement that both be signed. (*Cf. Iser Electric Co. v. Ingran Construction Co.* (1976), 44 Ill. App. 3d 640, 642-43.) (Supplemental contract and accompanying note given for same purpose and in course of same transaction, held "to be regarded as one"; also, changes in contract held effective, even though not initialed.) Further, the lack of a signature does not constitute a "magic" bar to the enforcement of the terms of an agreement, even where the agreement is within the Statute of Frauds. (See, *e.g., Welsh v. Jakstas* (1948), 401 Ill. 288, 299-300; *Wielander v. Henich* (1965), 64 Ill. App. 2d 228, 232-33.) Under these circumstances, we see no reason whatever for disregarding the cogent evidence of the terms of Grauer's employment which the memo supplies, merely because Dickson neglected to sign said memo.

■■ The Corporation's contention that the contract with Grauer was entirely oral, strikes us with some surprise, since the Corporation admitted in its answer that Dickson's memo was a "written salary contract," and there is nothing in the record to indicate that this was not the case. The Corporation has also argued that, since Grauer was an attorney hired as "in-house counsel," he was subject to dismissal at will. Since it is clear from the record that Grauer's legal duties were secondary and merely incidental to his management and engineering functions, we need not explore this assertion. On this record, in view of the clear indications in Dickson's letter and memo that the parties did not intend Grauer's contract to be terminable at will, the trial court was not in error in holding that the contract was of annual duration.

■■ The Corporation maintains that Grauer was dismissed for good

cause, since he "breached his fiduciary duty" by operating a private practice of law while serving as an assistant to the president. It is not contended that it is a *per se* breach of fiduciary duty for an attorney employed by a corporation in a managerial capacity to undertake to perform private legal services on his own time, but it is argued that Grauer "extensively engaged in private practice of law on company time," and was guilty of insubordination in refusing to give up his private practice when the Corporation's president, Dickson, demanded that he do so. Grauer's testimony at trial, however, was that Dickson gave him permission to practice law on company time, and even asked him to write a letter as a private attorney acting on behalf of Dickson's son. Grauer denied that Dickson ever demanded that he give up private practice. He testified that during his tenure with the company in 1973, he had income of only three to four hundred dollars from outside sources, although cross-examination indicated that it may have been somewhat more. The Corporation was unsuccessful in its attempt to prove specific instances in which Grauer practiced law on company time. Grauer said that he worked an average of 50 hours per week for the Corporation, and even at the time of his dismissal, we note that the payroll change notice classified his attendance as "good." The complimentary letter which he received shortly before his discharge lends further support to his case. Although Dickson and another witness for the Corporation gave testimony which contradicted that of Grauer, the evidence created a plain question of fact. It is axiomatic that a trial court's finding on such an issue will not be reversed unless it is against the manifest weight of the evidence. (*E.g., Singles v. Horwitz* (1975), 34 Ill. App. 3d 973.) On this record, we cannot hold that the trial court's finding that Grauer was not fired for cause was against the manifest weight of the evidence.

The Corporation has also argued that the trial court was in error in holding that Grauer's contract of employment required a certain number of days' notice to Grauer in order to terminate him. We do not believe that this is a correct statement of the court's holding. The Corporation cites the following statement, made by the the court in rendering its decision:

> "Also, I would feel that when a gentleman who is an assistant to the president is terminated, maybe he ought to be entitled to some notice of termination, at least let's say give him 30 days or give him 60 days."

However, when this statement is placed in context, it becomes apparent that the cited remark went only to the issue of Grauer's ability to mitigate damages, the trial court apparently feeling that, had Grauer received advance notice, he would have been able to find other employment more quickly, and thus reduce the loss that he suffered by reason of his

termination. The question of notice had not been raised by the parties, and an examination of the entire record convinces us that the trial court decided the case on the question of whether or not Grauer had been wrongfully discharged, and not on any issue involving a requirement for notice prior to termination.

Finally, the Corporation complains there is nothing in the record which would support the specific amount awarded Grauer by the trial court as damages. We must agree. The balance due Grauer under the contract, based upon the specified percentage of the Corporation's billings, was approximately $7,800. The trial court reduced this figure to $4,200 by a formula not apparent from the record, holding that the difference represented a credit for amounts Grauer could have earned during the balance of 1973, from other suitable employment.

■■■ While it was clearly incumbent upon Grauer to act to mitigate his damages after he was discharged (*e.g.*, *Kelly v. Chicago Park District* (1951), 409 Ill. 91), the Corporation, as the party breaching the contract, had the obligation to produce whatever proof existed in dimunition of damages. (*People ex rel. Bourne v. Johnson* (1965), 32 Ill. 2d 324, 329.) Yet, there was no clear evidence as to what sums Grauer earned or could have earned from reasonably similar employment in the same community during the balance of 1973. Having failed to introduce any evidence on this point, the Corporation cannot now successfully complain that the fact that the court reduced Grauer's damages anyway, merits a reversal. Since Grauer has filed no cross-appeal, we see no reason for reversing the judgment of the trial court on that ground.

The judgment of the circuit court of Du Page County is affirmed.

Judgment affirmed.

GUILD and SEIDENFELD, JJ., concur.