**J.C. CASSEL, Plaintiff,**

v.

**ANCILLA DEVELOPMENT GROUP, LTD., an Illinois corporation, Defendant.**

No. 88 C 8743.

United States District Court, N.D. Illinois, E.D.

Feb. 8, 1989.

Daniel J. Fumagalli, Chicago, Ill., for plaintiff.

Richard C. Robin, Kim A. Leffert, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

This order concerns defendant's motion to dismiss plaintiff's one-count amended complaint. For the reasons stated herein, the court finds some of plaintiff's allegations sufficient to maintain a breach of contract action against defendant. However, the court also finds that other allegations in the amended complaint do not establish any contractual rights. Accordingly, defendant's motion to dismiss is granted in part and denied in part.

### I. FACTS

Plaintiff J.C. Cassel was hired as an industrial engineer by defendant Ancilla Development Group, Ltd. ("Ancilla") on December 6, 1984. Ancilla fired Cassel on June 29, 1985. At the time he began employment for Ancilla, Cassel was given an employee handbook entitled, "Your Personnel Policy Handbook." In addition, Cassel received from Ancilla a letter dated December 6, 1984, describing the terms of his employment, including his responsibilities and compensation. Among other things, the letter promised Cassel "A *guaranteed salary* of $37,000 based upon annualized client billings of $63,000." (Emphasis in the original.) The employee handbook which Cassel received outlines the policies of the company. These policies include providing periodic performance evaluations

and procedures for handling employee grievances and taking disciplinary action against an employee.

In his amended complaint, Cassel alleges that the employee handbook and the December 6 letter were made part of a "contract of employment" between himself and Ancilla. Cassel further alleges that Ancilla breached the contract in several ways. Specifically, Cassel claims that Ancilla failed to comply with the terms of the December 6 letter by refusing to reimburse him for his business expenses or pay him the remainder of his "guaranteed" salary. Cassel also claims that Ancilla violated the terms of the handbook by failing to provide him with periodic performance evaluations and by failing to follow the proper procedures for implementing any termination or disciplinary action against him.

Ancilla has moved to dismiss Cassel's amended complaint on the grounds that Cassel's allegations do not establish the existence of an employment contract between Ancilla and Cassel. Ancilla takes the position that, as a matter of law, the terms of the employee handbook and December 6 letter do not create binding and enforceable contract rights.

## II. DISCUSSION

### A. *The Ancilla Employee Handbook*

■ In *Duldulao v. St. Mary of Nazareth Hospital Center,* 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987), the Illinois Supreme Court held that an employee handbook creates enforceable contract rights when the following three conditions are present:

First, the language of the [handbook] must contain a promise clear enough that an employee would reasonably believe that an offer had been made. Second, the [handbook] must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing work after learning of the [contents of the handbook].

106 Ill.Dec. at 12, 505 N.E.2d at 318. The plaintiff in *Duldulao,* a former employee of St. Mary of Nazareth Hospital, sued for breach of contract claiming that the hospital discharged her in violation of provisions in the hospital's employee handbook. *Id.* at 9–10, 505 N.E.2d at 315–16. The hospital's handbook provided that employees could not be terminated unless certain conditions were met and particular procedures were followed.[1] Applying the above test, the *Duldulao* court found that the provisions in the hospital's handbook restricting termination were sufficient to create an employment contract that altered the employee's at-will status. *Id.* at 12, 505 N.E. 2d at 318. Therefore, the court found that plaintiff had a valid contractual claim.

In the instant case, the Ancilla employee handbook, like the handbook at issue in *Duldulao,* restricts Ancilla's right to terminate its employees. Specifically, the section concerning employee grievances provides:

DEFINITION OF GRIEVANCE

A grievance shall be considered to be any complaint or dissatisfaction arising from an interpretation, application, or claimed violation of any provisions of [Ancilla's] policies, rules, regulations, or disciplinary action (other than lay-off or termination of an employee during his/her probationary period) taken by Ancilla.....

EMPLOYEE GRIEVANCE PROCEDURE

Any permanent, full or part-time, non-supervisory employee who had completed the probationary period *has the right to appeal* an action which he/she feels is unjust. The grievance *shall be settled*

1. The St. Mary of Nazareth Hospital Center handbook provided that "[a]t the end of 90 calendar days since employment the employee becomes a permanent employee and termination contemplated by the hospital cannot occur without proper notice and investigation." It also stated that permanent employees "are never dismissed without prior written admonitions and/or investigation that has been properly documented" and that "three warning notices within a twelve-month period are required before an employee is dismissed, except in the case of immediate dismissal." "Immediate dismissal" was narrowly defined in the handbook.

*in accordance with the following procedure ...*

Ancilla Handbook, p. 22 (emphasis added). When read in the light most favorable to Cassel, the "definition" section—although somewhat unclear—appears to include within the definition of "grievance" any complaint by a nonprobationary employee regarding his termination. This broad definition of "grievance" makes the "grievance procedure" section similar to the provisions at issue in *Duldulao*. It contains strong language granting the employee the right to certain procedures to contest his termination. Therefore, under *Duldulao*, the grievance procedure is contractually binding. *See Land v. Michael Reese Hospital and Medical Center*, 153 Ill.App.3d 465, 106 Ill.Dec. 470, 505 N.E.2d 1261 (1987) (plaintiff-employee's allegations that the hospital terminated her without following the grievance procedures outlined in the hospital's handbook were sufficient to state a breach of contract claim). Accordingly, Cassel can maintain a breach of contract action based on his allegations that he was denied the grievance procedures outlined in the Ancilla employee handbook.[2]

### B. *The December 6 Letter*

Cassel appears to make two separate arguments with respect to the letter he received from Ancilla. First, Cassel contends that the letter created a contract of employment for the duration of one year. To support this contention, Cassel points to the paragraph in the letter which provides:

> As discussed with you, our compensation package offers both a guaranteed base salary, as well as, rewarding efforts to contract new business. Our offer to you includes the following provisions:
>
> 1.) A *guaranteed salary* of $37,000 based upon annualized client billings of $63,000.
>
> 2.) *A bonus for contracting new business* ...
>
> 3.) The following *employee benefits* ...

(Emphasis in the original.) Cassel claims that this provision created a contract under which his salary was guaranteed for a year. Cassel also claims that Ancilla breached this contract when it terminated him after approximately six and one half months of employment and refused to pay him the remainder of his $37,000 salary.

The court finds that the language in the letter is insufficient to establish an employment contract with a one-year duration. Under well-settled Illinois law, an employer's promise to compensate an employee on a yearly basis does not create an employment contract for the duration of a year. *Mann v. Ben Tire Distributors, Ltd.*, 89 Ill.App.3d 695, 44 Ill.Dec. 869, 870, 411 N.E.2d 1235, 1236 (1980); *Palmateer v. International Harvester Co., Inc.*, 85 Ill. App.3d 50, 52, 40 Ill.Dec. 589, 591, 406 N.E.2d 595, 597 (1980), *rev'd on other grounds*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981); *Atwood v. Curtiss Candy Co.*, 22 Ill.App.2d 369, 161 N.E.2d 355 (1959). Therefore, Ancilla's promise to pay Cassel an "annual salary" did not create a one-year contract.

Moreover, contrary to Cassel's arguments, Ancilla's use of the term "guaranteed" also did not create a contract to pay Cassel for an entire year. Ancilla used the term "guaranteed" merely to distinguish two components of Cassel's compensation: his salary and his bonus. Ancilla did not guarantee payment for a year. Therefore, this case is distinguishable from the primary case on which Cassel relies, *Berutti v. Dierks Foods, Inc.*, 145 Ill.App.3d 931, 99 Ill.Dec. 775, 496 N.E.2d 350 (1986). In *Berutti*, the employer promised "a guaranteed salary *for twelve months* of $750 per week," 99 Ill.Dec. at 776, 496 N.E.2d at 351 (emphasis added). In holding that the parties had entered into an employment contract for a fixed term, the court found particularly critical the inclusion of the words "for twelve months." The court ruled that such language "connotes a guaranteed salary for a fixed duration." *Id.* at 779, 496 N.E.2d at 354. In the instant case, in contrast, there is no language in

---

**2.** Of course, whether Cassel can show any damages for breach of the grievance procedure provision remains to be seen.

the Ancilla letter which can be construed as guaranteeing the *duration* of Ancilla's payments to Cassel.[3] Therefore, this court rejects Cassel's claim that he entered into a contract of employment for the duration of a year. Cassel has no contractual right to the remainder of his salary or to any employee benefits after he was terminated.

■ However, Cassel makes a second argument with respect to the Ancilla letter. Cassel claims that Ancilla also committed a breach of contract when it failed to reimburse him for his travel expenses as promised in the letter.[4] Accepting these allegations as true, the court finds that Cassel states a valid contractual claim based on the letter.

### CONCLUSION

The court finds that nothing in the Ancilla employee handbook or the December 6, 1984 letter gave Cassel the right to be employed by or paid by Ancilla for any fixed duration. Therefore, to the extent that Cassel claims he had a right to receive salary or benefits from Ancilla for an entire year, or remain employed by Ancilla for a year, Ancilla's motion to dismiss is granted. However, the employee handbook grants Cassel the right to a particular grievance procedure which Cassel could have used to contest his termination. In addition, the December 6 letter grants Cassel the right to reimbursement for his travel expenses. Cassel can maintain a breach of contract action based on Ancilla's alleged violation of these rights. Therefore, Ancilla's motion to dismiss is denied to the extent that Cassel's contract claim is based on the enforcement of these rights.

IT IS SO ORDERED.

---

**3.** The case at bar is also distinguishable from *Grauer v. Valve and Primer Corp.*, 47 Ill.App.3d 152, 5 Ill.Dec. 540, 361 N.E.2d 863 (1977), wherein the court found an employment contract with a duration of one year was created. In *Grauer*, the court found other language in the letter from the employer—not relating to any "guaranteed salary"—that created a "strong inference that a contract for a year's duration was intended." 5 Ill.Dec. at 540, 361 N.E.2d at 863. In the instant case, there is no language in any part of the December 6 letter which creates such an inference.

**4.** The letter promised Cassel "Business Reimbursement of $.20 per mile when using your private automobile."