**Charlena RICKER, Plaintiff,**

v.

**The FULTON COUNTY SOIL AND WATER CONSERVATION DISTRICT, et al., Defendant.**

**No. 90–1194.**

United States District Court, C.D. Illinois.

May 29, 1992.

**638**

Richard L. Steagall, Nicoara & Steagall, Peoria, Ill., for plaintiff.

William A. Allison, Allison & Kelly, Bloomington, Ill., for defendant.

## ORDER

McDADE, District Judge.

Before the Court is Defendants' Motion for Summary Judgment [Doc. # 38, Part # 1] and Defendants' Motion to Strike [Doc. # 57, Part # 1]. For the foregoing reasons, Defendants' motion for summary judgment is denied as to Plaintiff's procedural due process claim, and continued as to Plaintiff's First Amendment claims to allow Plaintiff to supplement the record. Defendants' Motion to Strike is granted in part.

## BACKGROUND

Plaintiff brings this action against the Fulton County Soil and Water Conservation District and members of its Board of Directors pursuant to 42 U.S.C. § 1983. Plaintiff was formerly employed as a Resource Conservationist (R.C.) with the Fulton County Soil and Water District. Plaintiff claims that her discharge from the position of R.C. was in violation of the First and Fourteenth Amendments to the Constitution. Plaintiff claims that her employment contract and/or the Regulations promulgated by the Department of Natural Resources[1] and custom and usage of the local districts gave her a protectable property interest in continued employment of which she was deprived without due pro-

cess of law. Plaintiff also claims that she was discharged in violation of the First Amendment for her willingness to verify that Randy Grove, Region Three Representative of the Division of Natural Resources of the Illinois Department of Agriculture, informed the members of the Board prior to their vote to increase per diem compensation from $20 to $50 per day that payment of sums in excess of $20 was illegal, and for her investigation of the claims for per diem compensation of Defendant William Johnson for appearances which Plaintiff contends that Johnson never made. Plaintiff also brings pendant state law claims for breach of contract, interference with contract, and negligence.

Defendants have moved for summary judgment on Plaintiff's claim that she was fired without procedural due process on the grounds that Plaintiff had no protectable property interest in continued employment. Defendants have also moved for summary judgment on Plaintiff's First Amendment claims. First, Defendants claim that with respect to Plaintiff's willingness to verify Mr. Grove's statements, the alleged Constitutional violation is too speculative. Defendants also argue that Plaintiff has not demonstrated that any of the Defendants knew of her willingness to verify Mr. Grove's statements or of her investigation into Defendant Johnson's expenses.

## APPLICATION OF LAW

I. *Plaintiff Had A Protectable Property Interest In A One Year Term Of Employment.*

■ In order to state a claim for termination in violation of due process, a governmental employee must first demonstrate that he or she has a protectable property interest in continued employment. As stated by the Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972):

> Property interests ... are not created by the Constitution. Rather, they are creat-

---

1. These regulations are contained in the Fulton County Soil and Water Conservation District Operational Handbook.

ed and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

Under Seventh Circuit law, termination of an employee in breach of an employment contract may give rise to a due process claim. *Hostrop v. Board of Junior College Dist. No. 515*, 471 F.2d 488, 494 (7th Cir.1972), *cert. denied Board of Junior College Dist. No. 515 v. Hostrop*, 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973); *Vail v. Board of Educ. of Paris Union School Dist. No. 95*, 706 F.2d 1435 (7th Cir.1983), *aff'd by an equally divided court, Board of Educ. v. Vail*, 466 U.S. 377, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984). An employee employed under a contract for a fixed term who is terminable only for cause has a property interest in continued employment which he or she cannot be deprived of without due process. *Jungels v. Pierce*, 825 F.2d 1127 (7th Cir.1987). Under Illinois law, employment contracts are generally terminable at any time by either party, with or without cause, unless the contract itself specifies a duration or permits termination by an employer only under specified circumstances. *Geva v. Leo Burnett Co., Inc.*, 931 F.2d 1220, 1222 (7th Cir.1991). Where an employment contract is for a fixed term, the employment is not at will, and discharge can only be for cause. *Berutti v. Dierks Foods, Inc.*, 145 Ill.App.3d 931, 99 Ill.Dec. 775, 496 N.E.2d 350 (2d Dist.1986); *Grauer v. Valve And Primer Corp.*, 47 Ill.App.3d 152, 5 Ill.Dec. 540, 361 N.E.2d 863 (2d Dist.1977).

The employment contract between Plaintiff and the District provides in relevant part that:

(1) B). *Payment for Services*

1) The EMPLOYEE is to be paid at the rate of $1265.33 per month through August 31, 1990.

(2) E). *Funding Effects Upon Contract*

Carrying out the provisions of this agreement may be contingent upon the financial support of the Fulton County Soil and Water Conservation District receives from State and local sources. The district reserves the privilege to renegotiate or cancel the contract if adequate state or local funding is not received.

(3) F). *Effective Date and Termination of Contract*

1) This agreement will be in effect from September 1, 1989 through August 31, 1990.

2) This agreement may also be terminated by either the EMPLOYEE or the EMPLOYER under the terms of the Agreement for Employment upon 30 days written notice of such termination.

The contract on its face is for a term of one year.[2] Defendants claim that the contract is nevertheless terminable at will because (1) the contract may be cancelled under paragraph E if adequate funding is not received, (2) the contract contains what Defendants characterize as a 30 day reciprocal right of termination for any reason whatsoever in paragraph F(2), and (3) the Regulations provide that the District can forfeit the services of its R.C. for any reason by notifying the R.C. and the Division. Defendants arguments must fail.

First, Paragraph F(2) of the contract does not provide for a reciprocal right of termination for any reason whatsoever. Rather, paragraph E provides that the contract may be terminated by the employee upon 30 days written notice,[3] and by the

---

**2.** In fact, the Regulations refer to R.C.s as contract employees and provide that "contracts are effective beginning July 1 for existing R.C.s or the day on which they are signed if a new R.C. is hired after July 1," and "[c]ontracts with R.C.s shall cover a period of time of not more than one year and shall terminate June 30 of each year."

**3.** The contract does give Plaintiff a right to terminate upon 30 days written notice for any reason. However, in determining whether Plaintiff has a protectable property interest in continued employment, the focus should be upon the conditions under which Defendants could discharge Plaintiff. Here, Defendants could not have discharged Plaintiff for any reason whatsoever.

employer "under the terms of the Agreement for Employment" upon 30 days written notice. The "Agreement for Employment" is the Agreement between the District and the Division of Natural Resources and sets forth certain responsibilities and actions necessary for the proper administration of the Resource Conservationist position. As is relevant to the termination provision of the contract, the "Agreement for Employment" provides that "[t]his Agreement of Employment can be terminated at any time upon 30–days written notice to the Division of Natural Resources." Therefore, under the contract, the Employer can terminate upon 30 days written notice to the R.C. if it chooses to terminate the Agreement for Employment.

Second, the fact that the contract gives the employer the right to terminate if there is inadequate funding for the position or it decides to terminate the Agreement for Employment and that the Regulations give the Employer the right to forfeit the services of its R.C. (which would have the practical effect of terminating the current R.C.), does not suggest that absent any of these circumstances, the R.C. may be fired for any reason whatsoever.[4] Rather, the employment contract, when construed with the Regulations of which it is a part, unambiguously provides that the employee has a one year term of employment, subject to earlier termination only in the event of inadequate funding, termination of the District's agreement with the Division of Natural Resources, or the District's forfeiting the services of the R.C., none of which occurred here. Accordingly, Plaintiff's discharge prior to the expiration of the one year period could only have been for cause, and Plaintiff had a protectable property interest in a one year term of employment.

■ Plaintiff contends that the Regulations and local custom and usage give her an additional property interest in reasonable contract renewals. Plaintiff's argument on this issue must fail. First, Plaintiff has presented no evidence that there was any local custom and usage establish-

ing renewals of the R.C. contracts, other than the fact that her own contract had been renewed for the preceding two years. At best, this demonstrates only that Plaintiff had a unilateral expectation of renewal, which does not create a property interest. *Martin v. Unified School Dist. No. 434*, 728 F.2d 453 (10th Cir.1984). Further, the Regulations themselves say nothing about contract renewal. While Plaintiff points to some general provisions in the Regulations which specify procedures for disciplining employees, and provide that discharge of nonprobationary employees may only be for cause, these provisions do not suggest that the District has the obligation to renew an R.C.'s contract beyond the one year term specified in the portion of the Regulations relating to the R.C. position and in the employment contract. Plaintiff has no protectable property interest in contract renewals.

II. *If Plaintiff Was Fired In Retaliation For Her Expressed Willingness To Verify Randy Grove's Statements, Such Termination May Have Been A Violation Of Plaintiff's First Amendment Rights.*

■ "In general, a public employee's exercise of his or her right to speak out on matters of public concern may not furnish the basis for dismissal from public employment." *Patkus v. Sangamon–Cass Consortium*, 769 F.2d 1251, 1256 (7th Cir.1985). However, the employee's interests must be balanced against the employer's interests in regulating the speech of its employees. *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). As stated by the Supreme Court:

> The problem in any case is to arrive at a balance between the interests of the (employee), as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *Id.*

---

**4.** Although it is not entirely clear, the forfeiture provisions of the Regulations do not appear to refer to the termination of the Agreement for Employment.

Here, Defendants assert that the alleged violation of Plaintiff's First Amendment rights with respect to her willingness to verify Randy Grove's statements is too speculative to give rise to a First Amendment violation. Defendants state that the essence of Plaintiff's claim is that *"if* Randy Grove was required to confirm certain actions before the Board of the District, and if he requested the Plaintiff instead of the other employee of the District present at the meeting to confirm his actions, *then* Plaintiff was willing to tell the truth." (Defendants' Memorandum at 8). Defendants claim that because Plaintiff was never requested to confirm or deny what Randy Grove said at a Board meeting about per diem rates, summary judgment should be granted to Defendants. Defendants claim that there can be no First Amendment violation based on Plaintiff's "willingness to state the truth."

 Plaintiff must base her First Amendment claim on speech that actually occurred. *Barkoo v. Melby,* 901 F.2d 613 (7th Cir.1990) *reh'g denied.* Here, Plaintiff was never required to confirm Randy Grove's statements; however, Plaintiff did engage in certain speech that may be protected under the First Amendment. The deposition testimony submitted to this Court indicates that Plaintiff spoke to Randy Grove, in the presence of Colleen Widener, and told him that she was willing to verify what Grove had said to the Board about the legality of the per diem increase.[5] It also appears from the deposition testimony that at least Defendant Pensinger knew that Plaintiff spoke of her willingness to verify that Grove had said something to the Board, and that Randy Grove may have talked to Pensinger about this. Under certain circumstances, the non-public communications of a governmental employee may be protected by the First Amendment. *Id.; Givhan v. Western Line Consol. School*

*Dist.,* 439 U.S. 410, 415–16 & n. 4, 99 S.Ct. 693, 696–97 & n. 4, 58 L.Ed.2d 619 (1979); *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). If one of the reasons that Plaintiff was fired was because of her expressed willingness to verify Mr. Grove's statements to the Board, and such statements were as claimed by Plaintiff, Plaintiff's termination may have violated the First Amendment. The First Amendment violation alleged by Plaintiff is not too speculative to warrant recovery.

III. *Plaintiff May Be Able To Demonstrate That The Board Members Knew Of Her Willingness To Verify Randy Grove's Alleged Statements And Her Investigation Into William Johnson's Per Diem Expenses.*

Defendants also argue that Plaintiff cannot sustain her First Amendment claims because she cannot establish any connection between her liberty interest and her termination. Defendants argue that:

[I]n order to show some connection, Plaintiff would have to show that the Board members had knowledge that must demonstrate that the Board members had knowledge that she was prepared to verify what Randy Grove had said and knowledge that Plaintiff was "looking into" excessive claims for per diem made by Mr. Johnson; Plaintiff has so alleged in paragraph 44. However, the facts in this case do not show any knowledge by the Board members or Keith Van De Velde about the matter with Randy Grove or the per diem expenses of Mr. Johnson. If the defendants didn't know of Plaintiff's activities, then she was not fired because of them. (Defendants' Memorandum at 9).

Plaintiff responded to this allegation by producing direct evidence indicating that two of the Defendants knew of the investi-

---

**5.** Apparently, there is a dispute of fact as to exactly what Grove told the Board at the meeting at which the Board increased the per diem expense rate. Plaintiff claims that Grove told the Board that an increase from $20 to $50 per diem was unlawful. Randy Grove's deposition testimony indicates that he advised the Board that if they wanted to increase the per diem, they should formulate a resolution, take it to the land use council of their state association, and then have that reviewed by the state association board to change the legislation. Grove testified that he did not specifically tell the Board that the District Act prohibited an increase from the amount of $20.

gation into Johnson's expenses, and that one of the Defendants knew that Plaintiff was willing to verify that Grove had said something to the Board.[6] Plaintiff submitted the deposition testimony of Defendant Pensinger in which Pensinger testified that he knew prior to Plaintiff's discharge that she had talked with Randy Grove regarding his advice to the Board on raising per diem compensation and was willing to verify that Grove had said something to the Board. Plaintiff also signed an affidavit stating that she told Randy Grove, Colleen Widener, and Defendant Turner that she was looking into the expenses submitted by Defendant Johnson, and submitted additional deposition testimony of Defendant Pensinger in which he testified that prior to Plaintiff's discharge, he had heard that Plaintiff was looking into Johnson's expenses. Pensinger assumed that other Board members also knew this.

In order to establish a connection between Plaintiff's termination and her willingness to verify Randy Grove's statements and investigation into Defendant Johnson's expenses, Plaintiff must at the outset show that at least three of the five Board members, enough to carry the vote to terminate Plaintiff,[7] had knowledge of Plaintiff's activities. *Bowen v. Watkins,* 669 F.2d 979, 985 (5th Cir.1982) ("Liability under § 1983 requires causation, and a single vote is not a cause when the same decision would have been reached without that vote."). In order to hold an individual board member liable in his individual capacity, Plaintiff must establish that that member had such knowledge. Nonetheless, Plaintiff argues that her submission of direct evidence that one and two Board members knew of her activities is sufficient to avoid summary judgment because the knowledge of the other Defendants can be demonstrated by circumstantial evidence.[8] Plaintiff is correct that the knowledge of the other Defendants can be shown by circumstantial evidence. *Pontarelli v. Stone,* 930 F.2d 104, 115 (1st Cir.1991); *Pieczynski v. Duffy,* 875 F.2d 1331, 1335 (7th Cir.1989) *reh'g denied.* However, Plaintiff has failed to provide this Court with circumstantial evidence indicating that the other defendants had knowledge of Plaintiff's activities.

In reliance upon Plaintiff's counsel's statement at the February 21, 1992, oral argument on the motion for summary judgment that he could circumstantially demonstrate that the other Defendants had such knowledge, the Court is continuing the motion for summary judgment as to the First Amendment claims to allow Plaintiff time to provide this Court with circumstantial evidence sufficient to send to the jury the issue of whether the Defendants had knowledge of Plaintiff's activities. In so doing, the Court is not impermissibly forcing Plaintiff to make a prima facie case, as

---

**6.** At the hearing on the motion for summary judgment, the Court asked the parties to further brief the issues of whether establishing the knowledge of one or two members of the Board was sufficient to establish knowledge and thus potential liability of the District, or of other Board members in their individual capacities and whether breach of an employment contract could give rise to a due process claim. Plaintiff's Memorandum In Response To Court Order in part addressed these issues but then in parts III(A), (B), and (C)(1)–(4) went far beyond the Court ordered briefing, raising entirely new issues and submitting new evidence as to whether Plaintiff could prove a prima facie case under *Mount Healthy City School Dist. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), contrary to the Court's statement that the parties were only to brief the two issues ordered by the Court. Defendants filed a Motion To Strike Plaintiff's Response, and that motion is granted to the extent that the aforementioned parts of the Response, Plaintiff's Motion To Amend Her Statement Of Genuine Issues Of Material Fact For A Second Time, Plaintiff's Second Addition To Plaintiff's Statement of Genuine Issues Of Material Fact, Plaintiff's Motion for Leave to Cite Additional Authority, and the Second Affidavit of Charlena Ricker are stricken.

**7.** The vote to terminate Plaintiff was unanimous.

**8.** Plaintiff also submitted the deposition testimony of Defendant Pensinger in which Pensinger stated that he believed that several other Board members also knew of Plaintiff's investigation into Johnson's funds. Defendants argue that this testimony cannot be used to avoid summary judgment because there is no foundation for Pensinger's "assumption" that the other Defendants knew. The Court agrees with Defendants on this issue.

was suggested by Plaintiff's counsel at the hearing and in his response to the Court ordered briefing. In their summary judgment motion, Defendants argued that Plaintiff had to demonstrate a "connection" between Plaintiff's activities and her termination in order to recover on her First Amendment claims. Defendants argued that Plaintiff could not show a connection because the evidence failed to establish that any of the Board members knew of her activities. Obviously, to establish a connection between Plaintiff's activities and her termination, at a minimum, Plaintiff must demonstrate knowledge of her activities by a number of Board members sufficient to effect her termination. Thus, Defendants' motion put at issue the knowledge of all of the Defendants.

To demonstrate that there is at least a jury question as to the Defendants' knowledge, Plaintiff must come up with direct or circumstantial evidence that at least three of the Board members knew of Plaintiff's activities with respect to her claim against the District, and that each individual Board member knew, in order to recover against the Board members individually. That Plaintiff's counsel read the Defendants' motion too narrowly will not excuse Plaintiff from coming up with sufficient evidence to avoid summary judgment on an issue upon which Plaintiff bears the burden of proof. Plaintiff has 45 days from the date of this order within which to provide the Court with circumstantial evidence demonstrating that the other Defendants knew of Plaintiff's activities.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is denied as to Plaintiff's procedural due process claim and continued as to the First Amendment claims to allow Plaintiff to submit to the Court the additional evidence herein described. Defendant's Motion To Strike is granted in part.