**NATIONAL SERVICE ASSOCIATION, INC., an Illinois corporation and S.B. Lexington, Inc., an Illinois corporation, Plaintiffs,**

v.

**CAPITOL BANKERS LIFE INSURANCE COMPANY, INC., a Minnesota corporation, Defendant.**

No. 91 C 7040.

United States District Court, N.D. Illinois, E.D.

Aug. 25, 1993.

David Bruce Simon, Law Office of David B. Simon, Chicago, IL, for National Service Ass'n and S.B. Lexington, Inc.

Kathryn Marie Gleason, U.S. Trustee's Office, Donald Christopher Pasulka, Ross & Hardies, P.C., Chicago, IL, Timothy J. Pike, Peterson, Johnson & Murray, Milwaukee, WI, for Capitol Bankers Life Ins. Co., Inc.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is defendant Capitol Bankers Life Insurance Company's ("Capitol Bankers") motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The motion is granted in part and denied in part for reasons stated below. The court grants leave to file an amended complaint in compliance with this opinion.

### FACTS

Plaintiff National Service Association, Inc. ("National Service") is an Illinois insurance broker and is in the business of marketing and administering life insurance products. According to the complaint, Capitol Bankers entered into a written contract with National Service on April 1, 1984 providing that National Service was to perform marketing and administrative services on Capitol Bankers' behalf to facilitate the sale of Capitol Bankers' life insurance products. Plaintiff S.B. Lexington, Inc. ("Lexington") is in the business of selling life insurance. Lexington al-

legedly contracted with Capitol Bankers on April 21, 1980 to act as a general agent for Capitol Bankers. This relationship lasted nearly nine years.

The complaint alleges that National Service performed its contractual obligations by assisting with and conducting marketing seminars with Capitol Bankers' sales agents and producers, by providing technical advice to Capitol Bankers' sales agents, and by creating and administering the Voluntary Employees' Beneficiary Associations ("VEBA") plans and trusts. The complaint states that National Service invested a large amount of time and money into marketing and recruiting insurance agents and clients for Capitol Bankers. Capitol Bankers, however, failed to compensate National Service according to the agreement, billed clients directly in violation of the agreement, failed to pay for the advertising, promotional, and sales material for which they were obligated to pay according to the agreement, failed to introduce its policy and the policy's use with the VEBA to general agents and producers, and improperly terminated the agreement. Furthermore, Capitol Bankers allegedly purloined the agents and clients recruited by National Service in order to sell a different, comparable life insurance product and in order to avoid paying commissions and fees to National Service.

Capitol Bankers notified National Service that their agreement was terminated and allegedly immediately ceased performing its obligations, although the contract provides that their obligations were to continue for another six months. The complaint alleges that, following the termination of the agreement, National Service continued to administer Capitol Bankers' insurance policies and procured the payment of premiums from insureds at the request of and for the benefit of Capitol Bankers.

The complaint also alleges that Lexington performed its obligations as general agent. Lexington hired insurance sales agents, conducted sales training, and provided office space and materials to agents for the purposes of producing sales of Capitol Bankers' life insurance products. Beginning around February of 1985, Capitol Bankers allegedly failed to pay Lexington for its sales of Capitol Bankers' life insurance products. Also, Capitol Bankers allegedly pirated agents and clients Lexington recruited in order to sell its products and avoid payment to Lexington. Following the termination of the agreement between Capitol Bankers and Lexington, Lexington allegedly continued to procure the payment of premiums from insureds at the request of and for the benefit of Capitol Bankers.

The eight-count second amended complaint filed by National Service and Lexington seeks an accounting, alleges breach of contract, alleges breach of covenant of good faith, alleges quantum meruit and unjust enrichment, claims intentional interference with National Service's prospective business advantage, and seeks recovery on behalf of Lexington for an account stated. Capitol Bankers filed the present motion to dismiss counts I through V, VII, and VIII of the second amended complaint.

## DISCUSSION

 This court must emphasize that, on a motion to dismiss, all well-pleaded factual allegations are accepted as true, as well as all reasonable inferences drawn from those allegations. *Mid America Title Co. v. Kirk*, 991 F.2d 417, 419 (7th Cir.1993). Because federal courts simply require "notice pleading," *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993), this court construes pleadings liberally. See *Powell Duffryn Terminals, Inc. v. CJR Processing, Inc.*, 808 F.Supp. 652, 654 & n. 1, 655–56 (N.D.Ill.1992). A complaint's mere vagueness or lack of detail is not sufficient to justify a dismissal. *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985). In construing reasonable inferences, however, the court need not stretch allegations beyond their sensible and reasonable implications. *Chan v. City of Chicago*, 777 F.Supp. 1437 (N.D.Ill.1991). And although a complaint need not specify the correct legal theory to survive a motion to dismiss, *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134–35 (7th Cir.1992) (citing *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th

Cir.1992)), the complaint must allege all elements of a cause of action necessary for recovery, *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). A party fails to state a claim upon which relief may be granted only if that party can prove no set of facts upon which to grant legal relief, *Ross v. Creighton Univ.*, 957 F.2d 410, 413 (7th Cir.1992).

■ Counts I and V seek, on behalf of National Service and Lexington respectively, an equitable accounting and alternatively damages for breach of contract. Because an accounting is an equitable remedy, the court possesses broad discretion to refuse to award such a remedy if the party has an adequate remedy at law. *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir.1985). National Service and Lexington can demonstrate that there is no adequate remedy at law if the accounts between them and Capitol Bankers are of such a complicated nature that resort can only be made to an equitable remedy. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962); *TMF Tool Co. v. H.M. Financiere & Holding, S.A.*, 689 F.Supp. 820, 825 (N.D.Ill.1988).

Capitol Bankers claims that the discovery in this case should have produced enough documents to make the measure of contract damages ascertainable, and therefore the equitable remedy of an accounting is inapplicable. Nonetheless, for the purpose of this motion to dismiss, the allegations in the complaint are true. The complaint establishes that both National Service and Lexington have not received information necessary to ascertain the amounts due them even after they demanded the information from Capitol Bankers. Further, though the complaint alleges in the alternative a claim for money damages for breach of contract, the complaint also alleges that the damages cannot be determined from the records that have been available to it in the course of discovery. *See Heinold Commodities*, 766 F.2d at 1011. Thus, a determination of damages may not be possible without the need for an equitable accounting, as is alleged.

Nevertheless, National Service and Lexington have not alleged the accounts are complicated as to be beyond the comprehension of a trier of fact. *See TMF Tool*, 689 F.Supp. at 825; *Cleland v. Stadt*, 670 F.Supp. 814, 818–19 (N.D.Ill.1987). The types of fees and commissions alleged in the complaint—the amount of which is unknown to National Service and Lexington—may be the type of information particularly susceptible to an equitable accounting. But the court will not deem the legal remedies inadequate merely because the measure of damages due National Service and Lexington necessitates a resort to business records. *Zell v. Jacoby-Bender, Inc.*, 542 F.2d 34, 36 (7th Cir.1976). The court dismisses counts I and V on that basis but grants both plaintiffs leave to file an amended complaint. Leave should be granted because if the plaintiffs can, in compliance with Fed.R.Civ.P. 11, make an allegation concerning the complexity of the accounts, then their claims should stand.

■ Counts I and V of the complaint also allege claims for breach of contract. These counts allege essentially that neither plaintiffs were paid for the services they performed in accordance with their respective contracts. All quarrels as to the terms the plaintiffs use to describe their compensation aside, the complaint sufficiently places Capitol Bankers on notice that it allegedly owes National Service and Lexington for services performed in accordance with their respective contracts.

Additionally, the complaint states that National Service's contract was breached in various other respects, including that it was improperly terminated. That the contract was "improperly terminated" provides at least enough notice to withstand this motion to dismiss. It can reasonably be inferred that, because the term of the contract was one year, and thereafter terminable provided six months notice is given, there exists a set of facts upon which the court could grant relief. *See, e.g., Grauer v. Valve & Primer Corp.*, 47 Ill.App.3d 152, 5 Ill.Dec. 540, 543, 361 N.E.2d 863, 866 (1977).

■ Although it is proper for a complaint to allege alternative theories, *see* Fed. R.Civ.P. 8(a), the accounting claims and the

breach of contract claims should nonetheless be asserted in separate counts. Therefore, both counts I and V are dismissed in their entirety, without prejudice, and leave is granted to file an amended complaint.

■■■ Counts II and VIII assert claims based on a breach of the covenant of good faith. Every express contract in Illinois includes an implied promise to act in good faith. *Harrison v. Sears, Roebuck & Co.*, 189 Ill.App.3d 980, 137 Ill.Dec. 494, 502, 546 N.E.2d 248, 256 (1989), *appeal denied*, 128 Ill.2d 663, 139 Ill.Dec. 512, 548 N.E.2d 1068 (1990). Yet this covenant does not provide a person with a separate, independent cause of action. *LaScola v. U.S. Sprint Communications*, 946 F.2d 559, 565 (7th Cir.1991). On the contrary, courts rely on this duty only for assistance in interpreting other portions of contracts, especially those particular terms in a contract that furnish a party discretion. *Dayan v. McDonald's Corp.*, 125 Ill.App.3d 972, 81 Ill.Dec. 156, 170, 466 N.E.2d 958, 972 (1984). Thus, the duty merely limits the exercise of discretion which the contract vests in one of the parties. *Id.*

■■■ The duty of good faith and fair dealing must be read consistent with the reasonable expectations of the parties and cannot be inconsistent with express terms. *Harrison*, 137 Ill.Dec. at 502, 546 N.E.2d at 256. Under this general principle, the implied duty of good faith and fair dealing does not limit the right of an employer to discharge an at-will employee. *Id.* 137 Ill.Dec. at 501, 546 N.E.2d at 255. However, if the contract provides for a duration of a year, there must exist good cause for its termination. *Grauer*, 5 Ill.Dec. at 543, 361 N.E.2d at 866. Additionally, if a party acts with an improper motive, such as to annul himself or herself from a contractual obligation, and refuses "to bring about a condition precedent," or acts with a motive to refuse "an employee of reasonably anticipated benefits" and terminates that employee, "that party is exercising contractual discretion in a manner inconsistent with the reasonable expectations of the parties and therefore is acting in bad faith." *Dayan*, 81 Ill.Dec. at 170, 466 N.E.2d at 972; *see also LaScola*, 946 F.2d at 566 (an employee may not be deprived of commissions earned prior to separating from employer by a discharge made in bad faith and intended to deprive employee of commissions).

The agreement between Capitol Bankers and National Service states that Capitol Bankers will not contract with other general agents or subagents to provide the same services National Service was to provide. National Service is allegedly granted the exclusive right to develop and market a particular Capitol Bankers product. The complaint alleges that Capitol Bankers "pirated" agents from National Service in order to sell a different—but comparable—life insurance product. This type of interference with National Service's performance may be the basis for a breach of contract action for Capitol Bankers' violation of its duty to act in good faith. Additionally, the complaint alleges the agreement was wrongfully terminated within the first year of operation and that Capitol Bankers intended to avoid the payment of commissions and fees to National Service. Similarly, the complaint alleges Capitol Bankers "pirated" the agents and clients recruited by Lexington for the purpose of avoiding the payment of commissions and fees to Lexington. Therefore, the alleged facts could form the basis for a claim of breach of the contract for marketing services between Capitol Bankers and National Service or breach of the general agent contract between Capitol Bankers and Lexington. This is true if Capitol Bankers, in bad faith, interfered with both plaintiffs' abilities to perform their services by taking "agents" or "clients" away for its own use, or if Capitol Bankers deprived both plaintiffs of earned commissions by improperly terminating the agreements or by otherwise acting in bad faith. The counts, however, should not be plead as independent causes of action separate from the other allegations of breach of contract.

■■■ As the discussion above illustrates, the claims for equitable accounting should be asserted separately from the breach of contract claims. Further, the claims for breach of the duty of good faith should be asserted together with the other allegations of breach of contract. Because the court dismisses

counts I and V insofar as they fail to plead equitable accounting properly, and because counts II and VIII are improperly asserted separately from the breach of contract claims in counts I and V, the court dismisses counts II and VIII with leave granted to file an amended complaint consistent with this decision.

▇ Counts III and VII assert a claim for quantum meruit and unjust enrichment. The complaint attempts to recover under this equitable theory for services performed "during the terms of the agreement." The complaint does not allege that the contracts between Capitol Bankers and both National Service and Lexington were void for any reason. It therefore appears that the plaintiffs are not attempting to plead in the alternative in case they fail to establish the express contract as in *Business Development Servs. v. Field Container Corp.*, 96 Ill.App.3d 834, 52 Ill.Dec. 405, 413, 422 N.E.2d 86, 94 (1981). On the contrary, plaintiffs acknowledge the existence of the contracts in counts III and VII. As a result, the court strikes the allegations in counts III and VII insofar as they allege a claim for unjust enrichment and quantum meruit during the terms of the agreement.

▇ Nonetheless, the complaint also alleges that after the respective contracts were terminated, both National Service and Lexington were asked by Capitol Bankers to continue to perform their services. In that case, the allegations of quantum meruit and unjust enrichment state a claim. *See id.* Capitol Bankers argues that the agreements provided that payments were to continue for a period of time after termination of the contracts and therefore a claim to recover for these services after termination must be asserted under the contract, not under the equitable theories of quantum meruit and unjust enrichment. The contract actually provides that services and payments were to continue for six months after notice of termination was provided. The complaint states that National Service and Lexington both continued working after their agreements were terminated. The complaint does not specify how long a period of time after termination or notice of termination that services

continued. If Capitol Bankers permitted services to be performed after the agreements were terminated or after the time specified in the contracts, then recovery is available under the theory of quantum meruit. *See id.* 52 Ill.Dec. at 414, 422 N.E.2d at 95. The motion to dismiss counts III and VII is denied.

▇ Last, count IV alleges a claim for intentional interference with National Service's prospective business advantage. To state a claim for tortious interference with prospective economic advantage, a plaintiff must allege (1) he or she possessed a reasonable expectation of entering into a valid business relationship; (2) the defendant knew of this expectancy; (3) the defendant purposefully interfered with the expectancy such that he or she prevented it from ripening into a valid business relationship; and (4) damages resulted from the interference. *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 154 Ill.Dec. 649, 657, 568 N.E.2d 870, 878 (1991). The tort of interference usually lies against third-parties who interfere with the formation of a business relationship between other people. *See, e.g., Belden Corp. v. Internorth, Inc.*, 90 Ill.App.3d 547, 45 Ill.Dec. 765, 413 N.E.2d 98 (1980) (discharge was result of intentional and unjustified action of another); *see also Fellhauer*, 154 Ill.Dec. at 657–58, 568 N.E.2d at 878–79 (one who induces another to breach contract with a third party will be liable).

▇ The complaint and the agreement itself reveal that the agents with whom National Service was to perform its services were agents of Capitol Bankers. National Service was not contemplating entering into contracts or advantageous business relationships with these agents, but was to find and train these agents for the benefit of Capitol Bankers. The agents were to be the agents of Capitol Bankers and National Service's payment was to come from Capitol Bankers. As such, National Service was not contemplating any additional business or contractual relationship with these parties. This situation "does not present an instance of outsiders intermeddling maliciously in the contracts or affairs of other parties." *Fellhauer*, 154 Ill.Dec. at 658, 568 N.E.2d at 879 (citing

*Loewenthal Securities Co. White Paving Co.,* 351 Ill. 285, 300, 184 N.E. 310 (1932)). Instead, the complaint reveals that Capitol Bankers made a decision to discontinue its relationship with National Service, a decision that did not affect any contracts or business with third parties. The motion to dismiss count IV is granted.

### CONCLUSION

For the reasons outlined above, the court grants in part and denies in part Capitol Bankers' motion to dismiss. Counts I, II, V, and VIII are dismissed without prejudice. The court grants leave to file an amended complaint in accordance with this opinion. The court strikes the allegations in counts III and VII that state "during the performance of the Agreement." Last, count IV is dismissed with prejudice.

IT IS SO ORDERED.