Nos. 2--00--0458 & 2--00--1129 cons.    

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

MARK POKORA,

Plaintiff-Appellee and

Cross-Appellant,

v.

WAREHOUSE DIRECT, INC.,

Defendant-Appellant and

Cross-Appellee.

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court of Du Page County.

No.  98--L--1138

Honorable

Robert K. Kilander,

Judge, Presiding.

JUSTICE GROMETER delivered the opinion of the court:

Plaintiff, Mark Pokora, filed a complaint in the circuit court of Du Page County against defendant, Warehouse Direct, Inc. (Warehouse Direct or defendant), alleging, 
inter alia
, 
breach of an employment contract and promissory estoppel.  The trial court granted summary judgment in plaintiff's favor on the aforementioned counts and awarded plaintiff $31,577 in damages.  The trial court also granted plaintiff's motion for sanctions against defendant and denied defendant's motion for sanctions against plaintiff.  On appeal, defendant contends (1) the trial court erred in granting summary judgment in plaintiff's favor; (2) the trial court erred in finding that plaintiff mitigated his damages; (3) the trial court erred in denying its request for sanctions; and (4) the trial court erred in granting plaintiff's motion for sanctions.  In addition, plaintiff has filed a cross-appeal in which he contends that the trial court erred in failing to award damages beyond the date of trial.  For the reasons that follow, we affirm the judgment of the circuit court.

I.  BACKGROUND

Warehouse Direct is in the office-supply business.  In September 1997, plaintiff began working for Office Depot, one of Warehouse Direct's competitors.  In May 1998, a manufacturer in the office-supply business invited its customers to attend a Chicago Cubs baseball game.  Plaintiff, who was still employed by Office Depot, attended the event.  Also present was John Moyer, Warehouse Direct's president.  After the game, Moyer and plaintiff discussed the benefits of working for Warehouse Direct.  Moyer told plaintiff that Warehouse Direct offers a higher rate of commission and better customer service than Office Depot.  Approximately two weeks later, Moyer and plaintiff met for lunch.  At that meeting, plaintiff told Moyer that he sells about $40,000 worth of merchandise each month at Office Depot.

On May 29, 1998, Moyer sent plaintiff a letter offering him a sales position with Warehouse Direct.  The letter offered plaintiff a commission of 26.5% of the gross margin on all sales.  In addition, the letter stated: 

"TO PROVIDE INCENTIVE FOR YOU TO JOIN US AND TIME FOR YOU TO BUILD YOUR SALES, WAREHOUSE DIRECT WILL PAY YOU COMMISSION + WITH A GUARANTEE AS FOLLOWS:

COMMISSION + $2000/MONTH FOR FIRST 15 MONTHS

THEN COMMISSION + $1900/MONTH FOR 1 MONTH,

THEN COMMISSION + $1800/MONTH FOR 1 MONTH,

'+' PAY DECLINES BY $100/MONTH TO 0,

AND WAREHOUSE DIRECT WILL GUARANTEE MINIMUM PAY OF $5,000/MO YOUR FIRST YEAR."

After receiving the letter, plaintiff spoke to Moyer about extending the guaranteed minimum pay of $5,000 a month from 12 months to 18 months.  Plaintiff also asked Moyer if Warehouse Direct would reimburse him for $1,500 in business expenses and pay for the installation of a business telephone line in his home.  On June 4, 1998, Moyer sent plaintiff a letter "clarif[ying] and superced[ing his] previous letter of May 29, 1998."  The June 4, 1998, letter extended the guaranteed minimum pay of $5,000 to 18 months.  In addition, Warehouse Direct agreed to plaintiff's other expense requests.

Upon receiving the June 4, 1998, letter, plaintiff communicated with Moyer again.  Plaintiff told Moyer that he would start working for Warehouse Direct immediately if (1) the guaranteed minimum salary of $5,000 a month was increased to $5,500 a month and (2) the term was extended from 18 months to 24 months.  As a result of this conversation, Moyer signed and delivered to plaintiff a third letter on June 8, 1998.  Moyer's June 8, 1998, letter stated that it "clarifies and supercedes [his] previous letters of May 29, 1998 and June 4, 1998."  The letter, which incorporated the changes requested by plaintiff, read in pertinent part:

"WAREHOUSE DIRECT COMMISSION IS 26.5% OF GROSS MARGIN ON ALL ORDERS.  TO PROVIDE INCENTIVE FOR YOU TO JOIN US AND TIME FOR YOU TO BUILD YOUR SALES, WAREHOUSE DIRECT WILL PAY YOU COMMISSION + WITH A GUARANTEE AS FOLLOWS:

COMMISSION + $2000/MONTH FOR FIRST 15 MONTHS

THEN COMMISSION + $1900/MONTH FOR 1 MONTH,

THEN COMMISSION + $1800/MONTH FOR 1 MONTH,

'+' PAY DECLINES BY $100/MONTH TO 0,

AND WAREHOUSE DIRECT WILL GUARANTEE MINIMUM PAY OF $5,500/MO YOUR FIRST TWO YEARS."

Plaintiff began working for Warehouse Direct on June 23, 1998.

Unsatisfied with plaintiff's sales figures, Moyer spoke to him in August 1998.  Plaintiff ensured Moyer that his sales volume would improve.  In September, Moyer met with plaintiff to discuss his sales performance.  That same month, Warehouse Direct decreased plaintiff's monthly salary to $5,000.  In a letter dated September 28, 1998, plaintiff expressed his concern regarding the reduction of his monthly pay and asked Warehouse Direct to reinstate his original salary.

On October 1, 1998, Moyer responded to plaintiff's September 28, 1998, letter.  Moyer explained that Warehouse Direct would have to terminate its relationship with plaintiff if plaintiff could not "produce a sales volume reasonable to [his] minimum and as represented in a reasonable period of time."  In a letter dated October 7, 1998, plaintiff responded that he would "continue to do [his] best to develop sales volume for Warehouse Direct."  On October 12, 1998, Moyer sent plaintiff a letter terminating his employment with Warehouse Direct.

On November 5, 1998, plaintiff instituted the instant action in the circuit court of Du Page County.  Plaintiff's amended complaint, filed on January 14, 1999, contained three counts.  Count I alleged that the June 8, 1998, letter between plaintiff and defendant constituted a contract guaranteeing a minimum salary of $5,500 a month for a period of two years.  Plaintiff alleged that defendant breached the contract by first reducing his monthly pay and then by terminating his employment.  Count II stated a claim for promissory estoppel in which plaintiff alleged that he resigned from his position at Office Depot in reliance on defendant's promise to pay him a guaranteed minimum monthly salary of $5,500 for two years.  Count III of the complaint stated a claim for defamation 
per se
.  Plaintiff alleged that Moyer falsely told a Warehouse Direct employee that plaintiff misrepresented the amount of business he could bring to the company.  Plaintiff later agreed to dismiss count III of his complaint, and the trial court entered an order dismissing count III with prejudice.

On July 12, 1999, defendant filed an answer and a counterclaim.  Defendant's counterclaim alleged that plaintiff owed defendant more than $17,000 in overpaid wages.  In response, plaintiff filed a motion to dismiss the counterclaim as frivolous and a motion for sanctions.  At a hearing in August 1999, defendant requested and was granted until September 15, 1999, to respond to plaintiff's motion to dismiss.  Defendant never responded to the motion to dismiss and, on October 6, 1999, defendant withdrew the counterclaim.  The court granted defendant 28 days to file an amended counterclaim.  The court denied plaintiff's motion for sanctions.  Defendant did not file an amended counterclaim within the time specified by the trial court.

Early in November 1999, the parties filed cross-motions for summary judgment.  On November 23, 1999, the trial court granted defendant's motion for leave to file 
instanter
 its amended counterclaim.  The gist of defendant's amended counterclaim was that plaintiff misrepresented his monthly sales volume while employed at Office Depot and that defendant relied on plaintiff's representation in hiring him and paying him $5,500 per month.

On December 15, 1999, the trial court granted summary judgment in plaintiff's favor with respect to liability on counts I and II of his amended complaint.  On March 23, 2000, the trial court held a hearing on damages.  In its ruling, the court noted that plaintiff's employment contract did not expire until June 2000.  However, the court held that Illinois law limits damages in wrongful-discharge cases to those damages occurring up to the date of trial.  The court also determined that plaintiff mitigated his damages.  Accordingly, the court entered judgment in favor of plaintiff in the amount of $31,577 plus the costs of the suit.  The court's order contained language that it was final and appealable.

On April 18, 2000, plaintiff filed a bill of costs and a motion for sanctions against defendant pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137).  On April 24, 2000, defendant filed a notice of appeal from the trial court's December 15, 1999, and March 24, 2000, orders (No. 2--00--0458).  On May 1, 2000, plaintiff filed a notice of cross-appeal, requesting a modification of damages owed to plaintiff to include interest and future damages.  On May 25, 2000, defendant filed a motion for sanctions pursuant to Rule 137.

On June 21, 2000, the trial court granted plaintiff's bill of costs in the amount of $241, granted plaintiff's motion for sanctions in the amount of $1,625, and denied defendant's motion for sanctions.  On July 24, 2000, defendant filed a motion to reconsider its request for sanctions and a notice of appeal from the December 15, 1999, March 24, 2000, and June 21, 2000, trial court orders (No. 2--00--0860).  On our own motion, we dismissed appeal No. 2--00--0860.  On August 17, 2000, defendant moved to withdraw its motion to reconsider its request for sanctions.  On September 7, 2000, the trial court entered an agreed order granting defendant's motion to withdraw its motion to reconsider its request for sanctions.

On September 22, 2000, defendant filed its third notice of appeal (No. 2--00--1129).  The notice of appeal stated that it was an appeal from the orders entered by the trial court on December 15, 1999, March 24, 2000, and June 21, 2000.  The notice further indicated that the last order became final on September 7, 2000, when the trial court disposed of defendant's motion to reconsider.  On October 18, 2000, we granted defendant's motion to consolidate appeal No. 2--00--0458 with appeal No. 2--00--1129.

II. ANALYSIS

  Summary Judgment

1.  Breach of Contract

On appeal, defendant first contends that the trial court erred in granting summary judgment in plaintiff's favor on count I of his complaint.  According to defendant, its June 8 letter to plaintiff created nothing more than an at-will employment relationship.  Defendant argues that the pay scale communicated in the letter was a "per month floor" for plaintiff's first two years of employment that gradually decreased until plaintiff's salary was based entirely on his commission.  Relying principally on 
Berutti v. Dierks Foods, Inc.
, 145 Ill. App. 3d 931 (1986), plaintiff maintains that the June 8 letter 
sets forth a pay schedule that guarantees a salary for a specified duration.

A motion for summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  
Nila v. Hartford Insurance Co.
, 312 Ill. App. 3d 811, 815 (2000).  Our review of an order granting summary judgment is 
de novo
.  
Nila
, 312 Ill. App. 3d at 815.  In addition, where the facts are not in dispute, the existence and interpretation of a contract are questions of law that the trial court may decide on a motion for summary judgment and that we may review independently. 
Lewis-Connelly v. Board of Education of Deerfield Public Schools, District 109
, 277 Ill. App. 3d 554, 557 (1996).

Where the terms of a contract are clear and unambiguous, they will be given their natural and ordinary meanings.  
Berutti
, 145 Ill. App. 3d at 934.  A contract is ambiguous if it is susceptible to more than one meaning.  
Bishop v. Lakeland Animal Hospital, P.C.
, 268 Ill. App. 3d 114, 117 (1994).  However, a contract is not ambiguous solely because the parties disagree upon its meaning.  
Foxfield Realty, Inc. v. Kubala
, 287 Ill. App. 3d 519, 524 (1997).  Generally, absent a contrary intention, an employment agreement without a fixed duration is terminable at will by either party.  
Duldulao v. St. Mary of Nazareth Hospital Center
, 115 Ill. 2d 482, 489 (1987).  In fact, as we have previously noted, a hiring at a monthly or annual salary, if no duration is specified, is considered to create an at-will employment relationship.  
Jago v. Miller Fluid Power Corp.
, 245 Ill. App. 3d 876, 878 (1993).  

We find 
Berutti
, 145 Ill. App. 3d 931, directly on point.  In that case, the plaintiff worked for one of the defendant's competitors.  The defendant's personnel recruiters contacted the plaintiff about employment.  The defendant informed the plaintiff that it expected an increase in sales for the territory in which it would assign him.  In addition, while the defendant normally used a straight commission to compensate its sales staff, the plaintiff and the defendant discussed a pay schedule that included a base weekly salary.  The agreement was memorialized in a letter that provided in pertinent part that the defendant would pay the plaintiff a "[g]uaranteed salary for twelve months of $750.00 per week.  ($39K per annum)."  
Berutti
, 145 Ill. App. 3d at 933.  After only a few months, the defendant terminated the plaintiff on the basis that his sales performance was inadequate.  The plaintiff then filed a complaint against the defendant alleging breach of an employment contract.  The trial court granted summary judgment in the plaintiff's favor.

On appeal, this court affirmed the judgment of the trial court.  
Berutti
, 145 Ill. App. 3d at 937.  We determined that the defendant's letter to the plaintiff contained "clear words of guarantee" that the defendant would pay the plaintiff a guaranteed salary for 12 months.  
Berutti
, 145 Ill. App. 3d at 936.  The language contained in the letter described more than a rate of pay.  It guaranteed a salary for a specific duration.  
Berutti
, 145 Ill. App. 3d at 936.  In 
Berutti
, the defendant also argued that it did not breach the contract because the plaintiff was terminated for failure to increase sales in his territory.  Defendant asserted that an employer retains the right to discharge an employee for cause regardless of the duration of the employee's contract.  We rejected the defendant's contention, noting that the correspondence between the parties did not provide that the plaintiff was required to satisfy any performance requirements.  
Berutti
, 145 Ill. App. 3d at 937.

Also instructive is 
Grauer v. Valve & Primer Corp.
, 47 Ill. App. 3d 152 (1977).  In 
Grauer
, the plaintiff worked for the defendant during 1972 pursuant to an oral contract.  On January 18, 1973, the defendant sent the plaintiff a memorandum which "guarantee[d him] a minimum of $22,500 in 1973--more likely $24,000 plus--because I look for $3,500,000 sales (i.e. Shipments).  I review it annually based on performance."   
Grauer
, 47 Ill. App. 3d at 154.  The defendant terminated the plaintiff before the end of the year.  The plaintiff then sued the defendant, seeking damages for, 
inter alia
, breach of an employment contract.  The trial court entered judgment for the plaintiff, and this court affirmed.  

We concluded that the January 18 memorandum, which "guarantee[d]" a specified minimum compensation for 1973, contemplated a duration of employment for one year.  
Grauer
, 47 Ill. App. 3d at 155.  We also noted that, because the memorandum stated that the contract would be reviewed annually, there was a strong presumption that the parties intended a one-year contract.  
Grauer
, 47 Ill. App. 3d at 155.

Similarly, in this case, defendant's June 8, 1998, letter contained unambiguous words of guarantee that specified a certain amount of compensation for a minimum period of time.  The June 8 letter stated that defendant "WILL GUARANTEE MINIMUM PAY OF $5,500/MO YOUR FIRST TWO YEARS."  In light of our previous holdings in 
Grauer
 and 
Berutti
, we find that the parties clearly intended more than an at-will employment relationship.  We find further support for our position based on the fact that plaintiff explicitly negotiated an increase in the monthly salary as well as the term guaranteeing the salary for two years.  Moreover, we note that, as in 
Berutti
, the June 8, 1998, letter did not indicate that plaintiff was required to satisfy any performance requirements. Thus, the parties contemplated an employment arrangement for a specified period of time.

Defendant claims that an opposite result is dictated by 
Orr v. Ward
, 73 Ill. 318 (1874), and 
Jago
, 245 Ill. App. 3d 876.  However, a review of those two cases discloses that defendant is mistaken.

In 
Orr
, the defendant hired the plaintiff as a salesman pursuant to a contract for employment.  The contract provided that the defendant would pay the plaintiff $2,100 for the year 1873 and $2,400 for the year 1874 as well as a commission on all sales in excess of $35,000.  In June 1873, the defendant filed for bankruptcy, and the plaintiff was subsequently discharged.  Our supreme court rejected the plaintiff's request for damages arising out of the alleged breach of the employment contract.  The court noted that the parties' contract did not contain a "stipulation [that the defendant would] retain [the plaintiff] for two years, or any other fixed period.  Their undertaking is to pay him at a certain rate of compensation, if he shall discharge the duties assumed by him to be performed."  
Orr
, 73 Ill. at 319.  In contrast, here, defendant guaranteed plaintiff a specified minimum salary for a period of two years.

In 
Jago
, the plaintiff was hired by the defendant to manage a plant in Pennsylvania.  A letter from the defendant dated April 11, 1990, stated that the plaintiff would receive a base salary of $45,000 per year.  The letter also stated that the defendant's management incentive program "can contribute up to an additional 20% of [the plaintiff's] base salary, prorated on a 7/12 ratio for the balance of 1990.  Each year thereafter, [the plaintiff] will be participating on a full year basis."  
Jago
, 245 Ill. App. 3d at 877.  The plaintiff was later transferred to a plant in Illinois.  A letter dated November 29, 1990, provided that the plaintiff's salary would be $55,000 per year and that the plaintiff's participation in the management bonus program would "remain the same."  
Jago
, 245 Ill. App. 3d at 877.  The defendant also wrote that it expected the plaintiff to "report to [his] new position in Bensenville permanently on Monday, January 7, 1991," and that it was confident that the plaintiff would make "a significant contribution to help [the defendant] achieve its growth plans in the next several years."  
Jago
, 245 Ill. App. 3d at 877-78.  The defendant fired the plaintiff in June 1991.  The plaintiff filed a complaint against the defendant alleging breach of an employment contract and promissory estoppel.  The trial court dismissed both counts.

On appeal, this court affirmed.  
Jago
, 245 Ill. App. 3d at 877.  We found that the November 29 letter did not contain an express durational term.  
Jago
, 245 Ill. App. 3d at 879.  We reiterated the well-established principle that the reference to an annual salary does not convert a contract at will into a contract for a specified duration.  
Jago
, 245 Ill. App. 3d at 879.  We also held that the fact that the plaintiff's bonus was to be calculated on a yearly basis did not evince an intent to establish a yearly term of employment.  
Jago
, 245 Ill. App. 3d at 879.  Similarly, this court noted that a contract's reference to "permanent" employment is 
considered to be indefinite and terminable at will and that references to defendant's growth "in the next several years" is merely considered a statement of expectation, and not a guarantee of employment for a specific term.  
Jago
, 245 Ill. App. 3d at 879-80.

In 
Jago
, as in 
Orr
, the agreement between the plaintiff and the defendant 
did not contain any language guaranteeing a specified salary for a specified duration.  In fact, in 
Jago
, we rejected the plaintiff's reliance on 
Grauer
 and 
Berutti
 precisely because the 
Jago
 plaintiff's employment agreement did not refer to a "guaranteed salary" for a specific period of time.  
Jago
, 245 Ill. App. 3d at 880.  In the instant case, the June 8, 1998, letter contained a "guaranteed salary" for a specific period of time.

Defendant also contends that the June 8 letter outlines a compensation structure, not an employment schedule.  Defendant reasons that the fact that the letter contains a "commission + with a guarantee" according to a sliding scale indicates that the letter was not intended to constitute a contract of a minimum duration.  We disagree.  We read the passage referenced by defendant as intending to give plaintiff time in which to develop sales.  

In sum, we find that the trial court properly granted plaintiff's motion for summary judgment on count I of his complaint.

2.  Promissory Estoppel

Defendant also asserts that the trial court erred in granting summary judgment on plaintiff's promissory estoppel claim.  To prevail on a motion for summary judgment with respect to a cause of action for promissory estoppel, plaintiff must prove (1) defendant made an unambiguous promise to plaintiff; (2) plaintiff relied on this promise; (3) plaintiff's reliance was expected and foreseeable by defendant; and (4) plaintiff relied to his detriment.  
Jago
, 245 Ill. App. 3d at 880.  In this case, defendant insists that the June 8, 1998, letter did not make an unambiguous promise to employ plaintiff for a particular period of time.  We need not revisit this issue.  We have already rejected this argument in holding that the trial court properly granted summary judgment on count I of plaintiff's complaint.

B.  Mitigation of Damages

Next, defendant argues that the trial court's determination that plaintiff used reasonable efforts to mitigate his damages was against the manifest weight of the evidence.

At the hearing on damages, plaintiff testified that, after defendant discharged him, he began looking for a job in the mortgage banking industry.  Plaintiff interviewed with about 10 companies before accepting a position with Accubanc.  Plaintiff began working for Accubanc as a wholesale mortgage account representative late in December 1998.  Plaintiff worked for Accubanc until August 15, 1999, earning a monthly salary of $5,000.  On August 16, 1999, plaintiff began working for Worldwide Capital as vice-president of sales.  Worldwide Capital is involved in the retail sector of the mortgage industry.  Plaintiff earned a monthly salary of $3,750 at Worldwide Capital.

Plaintiff testified that he left Accubanc because the wholesale mortgage industry was down about 50% from the prior year, Accubanc had decided to discontinue its guaranteed salary base in favor of paying its employees on a straight commission basis, and the threat of layoffs existed at the company.  Moreover, plaintiff stated that he accepted the position at Worldwide Capital because, if the company were to go public, there was a possibility that he would receive stock options.

According to defendant, plaintiff's decision to leave Accubanc to work for Worldwide Capital was 
per se
 unreasonable because plaintiff could have earned substantially more by remaining with Accubanc.  Defendant also claims that the trial court applied the wrong legal standard when it determined that plaintiff's decision to quit his job at Accubanc was made "free from any evidence suggesting bad faith or intent to increase damages in this case."

A party injured by a breach of contract is required to use all reasonable means to mitigate his damages.  
Harmon Insurance Agency, Inc. v. Thorson
, 226 Ill. App. 3d 1050, 1053 (1992).  In breach-of-employment-contract cases, the discharged employee must act to mitigate his damages by seeking similar employment.  
Arneson v. Board of Trustees
, 210 Ill. App. 3d 844, 851 (1991).  The burden of proof that the injured party has failed to mitigate his damages is on the party that has breached the contract.  
Pioneer Bank & Trust Co. v. Seiko Sporting Goods, U.S.A. Co.
, 184 Ill. App. 3d 783, 790 (1989).  The trial court's finding with respect to the mitigation of damages will not be overturned unless it is against the manifest weight of the evidence.  See 
JMB Properties Urban Co. v. Paolucci
, 237 Ill. App. 3d 563, 567 (1992).

In this case, the trial court's finding that plaintiff used reasonable efforts to mitigate his damages was not against the manifest weight of the evidence.  The court accepted plaintiff's testimony that he left Accubanc to work for Worldwide Capital because he was offered the position of vice-president of sales and the possibility of acquiring future stock options.  The court concluded that plaintiff's explanation was reasonable.  Based on the evidence presented at the hearing on damages, we cannot say that the trial court's determination was against the manifest weight of the evidence.

Defendant suggests that plaintiff was required to accept the highest-paying position available.  However, defendant cites no case law for this proposition.  As plaintiff correctly notes, Illinois courts require the discharged employee only to make reasonable efforts to mitigate his damages.  See 
Harmon
, 226 Ill. App. 3d at 1053.  The trial court found that plaintiff's efforts were reasonable, and we have concluded that such a finding was not against the manifest weight of the evidence.

Nevertheless, defendant insists that if plaintiff had remained in the employ of Accubanc he could have continued to earn $5,000 per month.  However, defendant presented no evidence that plaintiff would have continued to earn a monthly salary of $5,000 had he remained in the employ of Accubanc.  Indeed, we note that plaintiff testified that Accubanc had decided to discontinue its salary base in favor of compensating employees on a straight commission basis.  Defendant presented no evidence to the contrary.  Further, plaintiff cited Accubanc's decision to change its method of compensation as one of the reasons he decided to work for Worldwide Capital.  Such a change, if implemented, would constitute a substantial alteration of the terms under which plaintiff accepted employment at Accubanc.  See 
Bang v. International Sisal Co.
, 4 N.W.2d 113, 116 (Minn. 1942) (salesman who was hired at a monthly salary and later discharged was not required to mitigate his damages by accepting employment on a straight commission basis).  Thus, defendant's contention with respect to plaintiff's salary had he remained with Accubanc finds no support in the record.

Moreover, contrary to defendant's contention, the trial court did not employ the wrong legal standard in deciding whether plaintiff mitigated his damages.  The court specifically recognized that in breach-of-employment-contract cases the employee must use all reasonable means to minimize his damages.  The court also noted that in such cases the employer has the burden of proving that the employee failed to mitigate his damages.  With these principles in mind, the court commented that it would determine whether plaintiff's efforts to mitigate damages were reasonable.  The court then stated that plaintiff's decision to transfer from Accubanc to Worldwide Capital "was a 
reasonable
 and proper business decision, free from any evidence suggesting bad faith or intent to increase damages in this case."  (Emphasis added.)  Accordingly, we reject defendant's position that the trial court used the wrong legal standard.

C.  Sanctions

The material in this section is unpublishable under Supreme Court Rule 23.

[Unpublishable material under Supreme Court Rule 23 omitted here.]

D.  Cross-appeal

Plaintiff has filed a cross-appeal in which he argues that the trial court improperly determined that Illinois law does not permit damages beyond the date of trial.  He urges this court to modify the trial court's order to include future damages for the term of the contract.  We decline plaintiff's invitation.

In 
Mount Hope Cemetery Ass'n. v. Weidenmann
, 139 Ill. 67 (1891), our supreme court held that, in breach-of-employment-contract cases, the discharged employee's damages are limited to the damages incurred from the date of the breach until the end of trial.  
Mount Hope
, 139 Ill. at 80.  Damages beyond the date of trial are disallowed because they are considered too speculative or uncertain.  
Lewis v. Loyola University
, 149 Ill. App. 3d 88, 95 (1986).  As the 
Lewis
 court noted, the employee may earn more than the contract price following trial, the contract may have been properly terminated by either party subsequent to the date of the trial, or the employee may become incapable of performing the duties before the expiration of the contract.  
Lewis
, 149 Ill. App. 3d at 95.  Plaintiff has not cited any case from our supreme court that expressly overrules 
Mount Hope
.  In fact, courts interpreting Illinois law still cite 
Mount Hope
 as precedential authority that, in a breach-of-employment-contract action, a plaintiff cannot recover damages beyond the date of trial.  See, 
e.g.
, 
Maier v. Lucent Technologies, Inc.
, 120 F.3d 730, 735-36 (7th Cir. 1997); 
Munoz v. Expedited Freight Systems, Inc.
, 775 F. Supp. 1181, 1186-87 (N.D. Ill. 1991); 
Lewis
, 149 Ill. App. 3d at 95; 
Corby v. Seventy-One Hundred Jeffery Avenue Building Corp.
, 325 Ill. App. 442, 457 (1945).  
Thus, we hold that plaintiff is not entitled to collect damages accruing after the close of trial.

Plaintiff, however, claims that in 
Doherty v. Schipper & Block
, 250 Ill. 128 (1911), the supreme court abrogated 
Mount Hope
.  Plaintiff interprets 
Doherty
 as implying that a litigant who sues for breach of contract prior to the expiration of the contract term may receive future damages.   We disagree.  In 
Doherty
, the supreme court merely held that a discharged employee who files a complaint for breach of an employment contract must recover all damages resulting from such breach in one action, thus rejecting any suggestion in 
Mount Hope
 that a party may bring multiple actions to recover damages.  
Doherty
, 250 Ill. at 134. 
Nowhere in the 
Doherty
 opinion does the court write that a discharged employee may recover damages accruing after trial.  Accord 
Munoz
, 775 F. Supp. at 1187 n.4 (noting that the 
Doherty
 court implicitly rejected 
Mount Hope
 to the extent that it permitted suits for installment of wages).  Indeed, we note that, while the 
Doherty
 court cited 
Mount Hope
, there is no language in the case overruling 
Mount Hope
 impliedly or otherwise. 

Citing to 
Gasbarra v. Park-Ohio Industries, Inc.
, 655 F.2d 119 (7th Cir. 1981), plaintiff claims that the Seventh Judicial Circuit has held that the 
Doherty
 court rejected the holding in 
Mount Hope
 regarding future damages. We disagree with plaintiff's interpretation of 
Gasbarra
.  The 
Gasbarra
 court merely explained that in 
Doherty
 our supreme court held that all damages resulting from the breach of an employment contract must be recovered in one action, thus 
negating language in 
Mount Hope
 that a wrongfully discharged employee may sue for benefits from time to time as they accrue.  
Gasbarra
, 665 F.2d at 122.  In any event, we are not bound by federal cases interpreting Illinois law.  
Bernot v. Primus Corp.
, 278 Ill. App. 3d 751, 755 (1996).  Plaintiff also claims that 27 other states allow employees to bring a breach-of-contract action for the entire contract term.  However, as with federal case law, we are not bound by the decisions of sister states.  
Bernot
, 278 Ill. App. 3d at 755.

In addition, plaintiff cites numerous other cases in support of his request for future damages.  Those cases, however, are readily distinguishable.  In none of those cases was the court asked to determine whether the discharged employee was entitled to damages beyond the date of trial.  Moreover, the cases are distinguishable on other bases as well.

In both 
Reinneck v. Taco Bell Corp.
, 297 Ill. App. 3d 211 (1998), and 
Heldenbrand v. Roadmaster Corp.
, 277 Ill. App. 3d 664 (1996), the future damages awarded to the plaintiffs
 were based on retaliatory-discharge claims, not breach-of-employment-contract actions.  
Stringham v. United Parcel Service, Inc.
, 181 Ill. App. 3d 312 (1989), involved a wrongful death action in which the plaintiff, the administrator of the decedent's estate, received an award based on the value of the decedent's future wages.  In 
Jabat, Inc. v. Smith
, 201 F.3d 852 (7th Cir. 2000), the defendant-counterplaintiff was awarded future damages.  On appeal, the plaintiff-counterdefendant argued that the award of damages beyond the trial date was improper.  Besides the fact that 
Jabat
 is a federal case, the Seventh Judicial Circuit never reached the merits of the issue.  Rather, the court held that the plaintiff-counterdefendant waived its objection to the award of future damages by failing to object to a jury instruction authorizing such damages.  
Jabat
, 201 F.3d at 856-57.  Consequently, under Illinois law, a plaintiff in a breach-of-employment-contract case is not entitled to damages beyond the date of trial.

III.  CONCLUSION

For the foregoing reasons, the judgment of the circuit court of DuPage County is affirmed.

Affirmed.

McLAREN and GEIGER, JJ., concur.