10-3753-cv(L)
Cappiello v. ICD Publications, Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 23rd day of January, two thousand twelve.

Present:
> ROBERT A. KATZMANN,
> GERARD E. LYNCH,
> > *Circuit Judges*,
> LEWIS A. KAPLAN,
> > *District Judge*.[*]

———————————————————————————

ROBERT N. CAPPIELLO,

> *Plaintiff-Appellee-Cross-Appellant*,

> > v.                                          Nos. 10-3753-cv(L)
> > > > > > > > > > > > > > > > > > > > > > > > 10-3802-cv(XAP)

ICD PUBLICATIONS, INC.,

> *Defendant-Appellant-Cross-Appellee,*

DAVID PALCEK,

> *Defendant-Appellee*.

———————————————————————————

---

[*] The Honorable J. Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

For Plaintiff-Appellee-Cross-Appellant:  DANIELÉ D. DE VOE, Weinstein, Kaplan & Cohen, P.C., Garden City, N.Y.

For Defendants:  DON R. SAMPEN (Edward M. Tobin, Edward M. Kay, *on the brief*), Clausen Miller, P.C., New York, N.Y.

Appeal from the United States District Court for the Eastern District of New York (Spatt, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellee-Cross-Appellant Robert N. Cappiello ("Cappiello") and Defendant-Appellant-Cross-Appellee ICD Publications, Inc. ("ICD") appeal from a final judgment entered on August 20, 2010 by the United States District Court for the Eastern District of New York (Spatt, *J.*). The underlying lawsuit principally concerns a June 11, 2007 employment contract (the "Agreement") between Cappiello and ICD that specified, *inter alia*, that the term of Cappiello's employment would extend from June 11, 2007 to June 1, 2010. Notwithstanding this provision, however, Cappiello was fired on January 31, 2008. Following his termination, Cappiello filed a complaint in the Supreme Court of New York pleading: (1) breach of contract against ICD; and (2) tortious inducement of breach of contract against Defendant-Cross-Appellee David Palcek, the President and CEO of ICD. Cappiello's complaint was timely removed to the Eastern District of New York pursuant to 28 U.S.C. § 1332.

On August 19, 2010, following a five-day bench trial, the district court issued a Memorandum of Decision and Order concluding, among other things, that: (1) ICD had breached the Agreement by terminating Cappiello without "cause," as that term was defined in the Agreement;(2) Cappiello was entitled to compensation for lost salary and reimbursement for health

2

insurance premiums; and (3) Cappiello was not entitled to compensation for lost commissions.  In its appeal of the district court's decision, ICD principally argues that: (1) the district court erred by misinterpreting the Agreement to provide that Cappiello could be fired *solely* for "cause" as that term was narrowly defined therein; (2) insufficient evidence supported the district court's finding that Cappiello attempted to mitigate his damages; and (3) Cappiello failed to introduce sufficient evidence to support his claim for damages for health insurance premiums.  In his cross appeal, Cappiello argues that the district court erred by not awarding him damages for lost commissions.  We assume the parties' familiarity with the remaining facts and procedural history of this case, which we discuss below only as necessary to explain our decision.

We first consider ICD's claim that the district court erred by misinterpreting the Agreement to provide that Cappiello could be fired solely for "cause" as that term was defined in the Agreement.  The interpretation of an umambiguous contract is a question of law subject to *de novo* review.  *See, e.g.*, *Omega Engineering, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005).  In this case, the Agreement provides that ICD may terminate Cappiello's employment prior to the end of its specified term "upon written notice by the Company that it is terminating the Employment Period for Cause."  App. 109.  As relevant here, the Agreement defines "Cause" as "the commission of a felony or crime involving moral turpitude or the commission of any other act involving dishonesty, disloyalty or fraud with respect to the Company."  App. 111.  Reading these provisions together, the district court concluded that the Agreement unambiguously provided that Cappiello could be terminated prior to June 1, 2010 on one of the bases specified in the Agreement.  We agree.  We find no ambiguity in the language of the contract, *Hillenbrand v. Meyer Medical Group, S.C.*, 682 N.E.2d 101, 104 (Ill. App. Ct. 1997) ("[T]he threshold issue is whether the contract is

3

ambiguous."), which clearly specifies the grounds on which Cappiello may be terminated. Accordingly, the district court did not err in concluding that Cappiello's employment could be terminated only for the reasons delineated in the Agreement. To the extent that ICD argues that either Cappiello's job performance or his expressions of discontent constituted "disloyalty," we cannot fault the district court's finding that his conduct did not constitute disloyalty within the meaning of the contract provision. To the extent it argues that under Illinois law, an employee may be fired for poor performance regardless of the existence of a term contract specifically defining the grounds for termination, we conclude that none of the cases cited by ICD support that proposition.

We turn next to ICD's contention that insufficient evidence supported the district court's finding that Cappiello attempted to mitigate his damages. It is well established that a "party injured by a breach of contract is required to use all reasonable means to mitigate his damages." *Pokora v. Warehouse Direct, Inc.*, 751 N.E.2d 1204, 1213 (Ill. App. Ct. 2001). "In breach-of-employment-contract-cases, the discharged employee must act to mitigate his damages by seeking similar employment." *Id.* "The burden of proof that the injured party has failed to mitigate damages is on the party who has breached the contract." *Pioneer Bank & Trust Co. v. Seiko Sporting Goods, U.S.A. Co.*, 540 N.E.2d 808, 813 (1989). Whether Cappiello used all reasonable means to mitigate his damages is a question of fact, and "[t]he district court's findings of fact after a bench trial are not to be overturned unless they are clearly erroneous." *Ceraso v. Motiva Enters., LLC*, 326 F.3d 303, 316 (2d Cir. 2003). Under the clear error standard, "[t]here is a strong presumption in favor of a trial court's findings of fact if supported by substantial evidence," and a reviewing court will not upset a factual finding "unless [it is] left with the definite and firm conviction that a mistake has

4

been made." *Travellers Int'l A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1579 (2d Cir. 1994) (internal quotation marks omitted).

In this case, substantial evidence supported the district court's determination that Cappiello used all reasonable means to mitigate his damages. Indeed, as the district court found, it is undisputed that Cappiello "contacted and consulted with recruiters in new York, Massachusetts, Ohio and Toronto; . . . conducted searches on a number of online job search databases; . . . contacted his preexisting contacts in the trade show and publishing fields; . . . sent out many resumes; . . . and went on a number of job interviews in a continuous effort to obtain other employment in a similar field." App. 53. Accordingly, we perceive no clear error in the district court's determination that Cappiello attempted to mitigate his damages.

ICD's last argument on appeal is that Cappiello failed to introduce sufficient evidence to sustain his claim for damages with respect to his health insurance premiums. *See Perfection Corp. v. Lochinvar Corp.*, 812 N.E.2d 465, 470 (Ill. App. Ct. 2004) ("The party who seeks damages has the burden not only to establish that he sustained damages, but also to establish a reasonable basis for computation of those damages."). During the bench trial below, Cappiello attempted to offer a letter from his insurance provider to corroborate his health insurance expenditures, but defendants successfully challenged the letter's admission on the ground that it constituted unauthenticated hearsay. Accordingly, the district court instead "credit[ed] the plaintiff's detailed testimony as to the monies expended and to be expended for medical and dental insurance premiums." *Cappiello v. ICD Publs., Inc.*, No. CV 08-02417 (ADS), 2010 WL 3310718, at *26 (E.D.N.Y. Aug. 19, 2010). Cappiello's testimony in this regard was undisputed. *Id. See, e.g.*, *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 611 (7th Cir. 2006) ("Under Illinois law, the evidence need only tend to show a basis

5

for the computation of damages with a fair degree of probability."); *Draiman v. Multiut Corp.*, No. 2008 U.S. Dist. LEXIS 32357, at \*22 (N.D. Ill. Mar. 31, 2008) ("Oral testimony and rough estimates generally provide valid bases for calculating damages . . . .); *Woltman v. Am. States Ins. Co.*, No. 05-2198, 2006 U.S. Dist. LEXIS 77214, at \*8 (C.D. Ill. Oct. 20, 2006) (allowing breach of contract claim to go forward without expert testimony as to damages because damages were within the plaintiff's personal knowledge); *accord Fakhoury v. Vapor Corp.*, 507 N.E.2d 50, 55 (Ill. App. Ct. 1987) ("It is true that an award of future loss of earnings cannot be sustained wherein the foundation is speculative or conjectural testimony; however, where such awards find their basis in testimony delivered with reasonable certainty, they must be upheld.").

Finally, we consider Cappiello's claim on his cross-appeal that the district court erred "by (1) not awarding plaintiff an additional $60,000.00 per year in minimum commissions in his role as Vice President of Conferences and Special Events and (2) by not also awarding plaintiff override commissions for his role as Interim Group Publisher in 2007." Pl.'s Br. 48. We disagree. With respect to the $60,0000 in commissions, Cappiello notes that the Agreement provides that he "*shall* be entitled to commissions" and that those commissions "*will* reach $60,000 annually." App. 108 (emphasis added). Cappiello, however, quotes these provisions out of context. The full paragraph of the Agreement states:

> Employee shall be entitled to commissions (the "Commissions") *based on performance*, at a schedule to be determined upon the starting date (above). However, it is the intent of the Employer to design a commission program which will reach $60,000 annually, *based on performance of the Employee in achieving additional net sales for the Company*.

*Id.* at 108 (emphasis added). Both sentences quoted by Cappiello, therefore, contain conditional language clearly indicating that Cappiello's commissions would be based on his performance and his success in achieving additional net sales for ICD. Because Cappiello introduced no evidence

6

indicating he achieved additional net sales for ICD, the district court correctly concluded that he was not entitled to $60,000 in commissions. This conclusion is further supported by the fact that payment of commissions was conditioned upon "a schedule to be determined upon the starting date," *id.*, but no evidence was introduced showing that such a schedule was ever implemented. *See PFT Roberson, Inc. v. Volvo Trucks North America, Inc.*, 420 F.3d 728, 731 (7th Cir. 2005) ("When negotiators say that agreement is subject to a more definitive document, Illinois treats this as demonstrating intent not to be bound until that document has been prepared and signed. Illinois is averse to enforcing tentative agreements that are expressly contingent on the signing of formal or final documents.") (internal citation omitted).

Cappiello's argument with respect to the so-called "override" commissions is similarly without merit. Cappiello bases this argument solely on the testimony of David Palcek, not on any language in the Agreement itself, and "where a contract purports on its face to be a complete expression of the entire agreement, courts will not add another term about which the agreement is silent." *Gallagher v. Lenart*, 854 N.E.2d 800, 807 (Ill. App. Ct. 2006).

We have considered the parties' remaining arguments and find them to be without merit. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

7